UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEMORA J. JOHNSON,

Case No. 10-14926

Plaintiff,

Paul D. Borman
United States District Judge

vs.

COMMISSIONER OF SOCIAL SECURITY,

Michael Hluchaniuk
United States Magistrate Judge

Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)**

**I.    PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On December 11, 2010, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Paul D. Borman referred this matter to the undersigned to review the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 9, 14).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on February 4, 2008, alleging that she

became unable to work on April 13, 2006.  (Dkt. 7-5, Pg ID 141-151).  The claim

was initially disapproved by the Commissioner on May 9, 2008.  (Dkt. 7-4, Pg ID

76-83).  Plaintiff requested a hearing and on September 8, 2009, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) Joel G. Fina, who

considered the case *de novo*.  In a decision dated November 10, 2009, the ALJ

found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 25-35).  Plaintiff requested

a review of this decision on December 3, 2009.  (Dkt. 7-2, Pg ID 22-24).  The

ALJ's decision became the final decision of the Commissioner when, after the

review of additional exhibits[1] (Dkt. 7-2, Pg ID 20-21), the Appeals Council, on

November 29, 2010, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 17);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

--------

    [1] In this circuit, where the Appeals Council considers additional evidence
but denies a request to review the ALJ's decision, since it has been held that the
record is closed at the administrative law judge level, those "AC" exhibits
submitted to the Appeals Council are not part of the record for purposes of judicial
review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r
of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court
review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence
presented to the ALJ.  In other words, Appeals Council evidence may not be
considered for the purpose of substantial evidence review.

**AFFIRMED**.

## II.     FACTUAL BACKGROUND

A.     <u>ALJ Findings</u>

Plaintiff was 45 years of age at the time of the most recent administrative hearing.  (Dkt. 7-2, Pg ID 45).  Plaintiff's relevant work history included approximately 16 years as a cook, janitor, and job coach.  (Dkt. 7-6, Pg ID 173). In denying plaintiff's claims, defendant Commissioner considered arthritis, lung/breathing problem, obesity, numbness and weakness in the hands and legs, carpal tunnel in both wrists, daily severe headaches, and back problems as possible bases of disability.  (Dkt. 7-6, Pg ID 172).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since April 13, 2006.  (Dkt. 7-2, Pg ID 30).  At step two, the ALJ found that plaintiff's asthma; degenerative joint disease of the knees and hands; obesity; and anemia with sickle cell trait were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 31).  At step four, the ALJ found that plaintiff could not perform her previous work as an employment training specialist (job coach).  (Dkt. 7-2, Pg ID 33).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a

significant number of jobs available in the national economy. (Dkt. 7-2, Pg ID 34).

    B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, the ALJ makes several confusing and contradictory statements in his decision and misstates the medical evidence in his decision, and does so without any explanation. Plaintiff contends that the ALJ does not give any rationale for his decision and only makes conclusory statements without any discussion of the objective medical evidence in the decision, any discussion of the factual basis for the decision, and no discussion in the decision of special factors such as medication side effects or pain plaintiff suffers. Rather, according to plaintiff, the ALJ makes blanket statements such as "inconsistent with the objective medical evidence" without any rationale and ignores all the medical opinions of plaintiff's treating physicians without any rational basis.

The ALJ cites the fact that the treating physician, Dr. Abellana's "treatment notes do not support these physical limitations" and the treating physician is afforded "reduced weight." (Tr. 17). Plaintiff asserts that the reasoning by the ALJ is not supported by objective medical evidence or common sense. Plaintiff further contends that the ALJ bases his own medical findings on the fact that plaintiff's testimony is "exaggerated," but the ALJ does not point to anything in his decision to substantiate this opinion. Plaintiff also argues that the ALJ

attempts to substitute his own medical expertise for that of trained physician and cherry-picks from the records what he agrees with.  Plaintiff says that the ALJ inappropriately afforded greater weight to the DDS physician reviewer, a doctor who has never even seen the plaintiff and the only basis doing so is the opinion of the DDS physician was cherry-picked to seemingly favor the ALJ's ultimate decision.  Plaintiff contends that the ALJ's "blanket statements" about her are based on his personal feelings regarding plaintiff and are never substantiated by the objective medical evidence.

Plaintiff says that the findings of the consultative examiner, Dr. Cynthia Shelby-Lane, MD, found Plaintiff suffered from arthritis in her hands and knees, chronic back pain, "marked obesity," carpal tunnel syndrome, and chronic headache, are consistent with the opinions of plaintiff's treating physician. Plaintiff asserts that the ALJ improperly tried to discredit Dr. Shelby-Lane's medical opinion by stating that plaintiff never had such medical tests as an MRI, CT, or EMG.  However, the ALJ never considered plaintiff's indigence and lack of adequate medical insurance as a reason for not having these tests done.  (Tr. 16).  According to plaintiff, this is reversible legal error.  According to plaintiff, the most troubling aspect of the ALJ's decision is that he dismisses the objective medical opinion of Dr. Abellana without any rationale.  While the ALJ states that Dr. Abellana's opinion was based on plaintiff's subjective "exaggerated"

complaints, plaintiff contends this is not factually consistent with the objective medical evidence because treatment notes from Dr. Abellana reveal a completely different scenario than that described in the ALJ's decision.  Specifically, plaintiff points to the January 30, 2009, examination by Dr. Abellana, which noted that she had been hospitalized for 10 days following a pulmonary embolism.  (Tr. 429). Further, Dr. Abellana noted that plaintiff had a cast shoe on her right foot and was using a cane.  *Id*.  Dr. Abellana also requested plaintiff to participate in a sleep study.  *Id*.  Plaintiff also asserts that the ALJ failed to evaluate whether plaintiff is capable of a competitive work schedule *i.e.*, 8 hour day, 40 hour work week.

While the ALJ determined that plaintiff had the severe impairments of asthma, degenerative joint disease of the knees and hands, obesity, and anemia with sickle cell trait, plaintiff argues that he inappropriately determined that she was able to perform sedentary work.  The ALJ limited plaintiff to a sit/stand option; never crawl or climb ladders, ropes, or scaffolds; frequently balance; occasionally climb ramps or stairs, stoop, crouch, or kneel; occasionally reach overhead; frequently handle objects and finger; avoid fumes, odors, dusts, and gases; and avoid unprotected heights and the use of moving machinery. *Id*. Plaintiff contends that the ALJ's further limitation of a sit or stand option at will "provided that the claimant is not taken off task more than 10% of the workday" is "confusing."  *Id*.  Plaintiff argues that the ALJ's RFC determination is flawed on

its face because of the limitations in the RFC are contradictory to the severe impairments found in step 2. The ALJ failed to factor in his RFC determination his own previous conclusion that plaintiff has the severe impairments of degenerative joint disease of the knees and hands along with the limitation of obesity. According to plaintiff, there is not a scintilla of evidence to support the RFC assessment that plaintiff would be capable of sedentary work and there was no evaluation by the ALJ as to whether plaintiff needed to elevate her feet during the day or lay down from fatigue, or concentration problems related to plaintiff's severe fatigue and pain.

While the ALJ found that obesity is a severe impairment, the decision does not contain an evaluation of obesity in accordance with the provisions set forth in Social Security Ruling (SSR) 02-01p. As provided by SSR 02-01p, when obesity is a severe impairment, an assessment should be made of the effect it has on an individual's ability to perform routine movement and necessary physical activity within the work environment. There was no evaluation of obesity by the ALJ on how it affects plaintiff. Additionally, plaintiff asserts that the combined effect of obesity with other impairments may be greater than might be expected without obesity, and must be considered.

According to Social Security Ruling 96-8p, the ALJ "must" discuss these issues and not free to simply ignore the issue. According to plaintiff, the ALJ

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 10-14926

never complied or even attempted to reconcile Social Security Ruling 96-8p with his decision.  And, when the ALJ discussed the accurate limitations of plaintiff, the vocational expert clearly states that no jobs exist.  Thus, plaintiff maintains that reversal and an award of benefits is appropriate.

      C.      <u>Commissioner's Motion for Summary Judgment</u>

      The Commissioner contends that the ALJ reasonably evaluated and discounted Dr. Abellana's opinion and found plaintiff to be not disabled.  Here, the ALJ satisfied the "good reasons" requirement by expressly addressing Dr. Abellana's opinion in his decision, and by explaining that he afforded the opinion minimal weight because it was unsupported by medical evidence or explanation, it was inconsistent with Dr. Abellana's own treatment records, and it was contradicted by the opinion of Dr. Joh.  (Tr. 17).  Dr. Abellana opined that plaintiff was incapable of working and placed highly restrictive limitations on her ability to use her upper extremities, sit, stand, and walk.  (Tr. 383).  For example, Dr. Abellana stated that plaintiff could not work even one hour a day, could only sit fifteen minutes at a time, and could not lift even five pounds.  (Tr. 383).  As the ALJ noted, Dr. Abellana treated plaintiff on a monthly basis between January and August 2009, but never suggested any similar limitations in his treatment notes.  (Tr. 17).  Instead, Dr. Abellana merely provided plaintiff with prescription medications.  (Tr. 199-200, 414-428).  Moreover, Dr. Abellana did not cite to any

objective medical evidence, such as laboratory tests or examination findings, to support his opinion.  Plaintiff argues that support for Dr. Abellana's opinion can be found in his treatment notes, but plaintiff does not explain how these treatment notes would support such extreme workplace limitations as Dr. Abellana identified.  For example, plaintiff cites to treatment notes following her January 2009 hospitalization for a pulmonary embolism, but offers no explanation as to how these notes would support a finding that she was unable to work.  Plaintiff was released from the hospital after eleven days (Tr. 385), and afterwards, Dr. Abellana prescribed blood thinner medication, but did not place any restrictions on plaintiff's ability to perform activities.  (Tr. 414-428).  Next, plaintiff references a treatment note that stated that she used a cane and a cast shoe on her right foot. However, this treatment note was created by Dr. Wessel, and there is no indication that Dr. Abellana ever reviewed this note prior to forming his opinion.  Even if Dr. Abellana did review this treatment note, the Commissioner asserts that it does not suggest that plaintiff was limited to the degree he described.  The ALJ accommodated plaintiff's difficulty walking by limiting her to sedentary work, and by prohibiting her from crawling and climbing ladders, ropes, or scaffolds, and work involving unprotected heights.  (Tr. 15).  Plaintiff also argues that Dr. Abellana's opinion is supported by Dr. Wessel's recommendation that plaintiff partake in a sleep study.  However, according to the Commissioner, there is no

indication that plaintiff ever participated in such a study, and plaintiff does not elaborate on why this recommendation would either preclude her from working or substantiate Dr. Abellana's opinion. Based on the foregoing, the Commissioner asserts that the ALJ reasonably discounted Dr. Abellana's unsupported opinion.

The Commissioner disagrees with plaintiff's claim that the ALJ selectively reviewed the evidence while overlooking other "objective medical evidence" in the record, particularly given that plaintiff offers no examples of what tests, laboratory results, or exam findings she believes the ALJ overlooked. The Commissioner also disagrees with plaintiff's suggestion that the ALJ tried to discredit Dr. Shelby-Lane by stating that Plaintiff never received certain medical tests such as a CT scan, MRI, or EMG. According to the Commissioner, plaintiff misreads the ALJ's decision as the ALJ did not attempt to discredit Dr. Shelby-Lane's findings. Instead, the ALJ was merely summarizing Dr. Shelby-Lane's report, and it was Dr. Shelby-Lane herself who commented that plaintiff had not undergone these particular laboratory tests. (Tr. 362). The ALJ did not discredit Dr. Shelby-Lane's report, and the Commissioner asserts that RFC finding is generally consistent with her exam findings. Further, the Commissioner points out that plaintiff has not explained how Dr. Shelby-Lane's findings would undermine the ALJ's RFC finding.

Plaintiff contends that the ALJ overlooked "special factors such as

medication side effects or pain." The Commissioner points out, however, that no doctor of record noted that plaintiff had medication side effects that would preclude her from working. In fact, Dr. Abellana expressly stated that nonexertional limitations, such as the side-effects of medication, fatigue, or the need to take rest breaks, would not interfere with plaintiff's ability to work. (Tr. 383). With regard to plaintiff's complaints of pain, the ALJ acknowledged that plaintiff's impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding. (Tr. 16). Plaintiff alleges that the ALJ dismissed her complaints based "on his personal feelings regarding Plaintiff" but again plaintiff fails to cite any support for her argument. Instead, according to the Commissioner, the ALJ carefully reviewed the record and provided a thorough analysis of the evidence to support his credibility finding.

The Commissioner urges the Court to reject plaintiff's argument that the ALJ inappropriately afforded too much weight to Dr. Joh's opinion because he was a non-examining doctor. Dr. Joh found that plaintiff could lift/carry 20 pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour day, and sit for six hours in an eight-hour day. (Tr. 375). Dr. Joh also stated that plaintiff should only occasionally climb ramps or stairs, but never climb

ladders, ropes, or scaffolds. (Tr. 376). He also stated that plaintiff could only occasionally stoop, kneel, and crawl, and could frequently balance and crouch. (Tr. 376). Dr. Joh recommended that plaintiff avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gases, and poor ventilation. (Tr. 378). According to the Commissioner, in appropriate circumstances, a reviewing doctor's opinion may be entitled to greater weight than the opinions of treating sources. Here, the Commissioner contends that the ALJ adequately explained why the treating doctor, Dr. Abellana, was not entitled to significant weight, and reasonably afforded greater weight to Dr. Joh's opinion because it was consistent with and supported by the objective medical evidence. For example, Dr. Joh noted that plaintiff had no respiratory distress episodes, and was able to control her breathing difficulties through medication. (Tr. 375). Dr. Joh also stated that the consulting examiner did not note any difficulties with mobility beyond plaintiff's obesity. (Tr. 375). According to the Commissioner, plaintiff has not challenged any part of Dr. Joh's opinion or explained why the ALJ was not entitled to rely on Dr. Joh's opinion. The Commissioner also points out that the ALJ found a more restrictive RFC than Dr. Joh found.

Plaintiff argues that the ALJ did not address whether she was capable of performing "sustained work activities" on a regular and continuing basis. According to the Commissioner, the ALJ complied with this ruling, and expressly

considered SSR 96-8p in determining plaintiff's RFC. (Tr. 14). Specifically, the Commissioner points out that the ALJ, in his RFC finding, identified the frequency at which plaintiff could perform specific workplace activities. For example, the ALJ noted that plaintiff could never crawl or climb ladders, ropes, or scaffolds, and could occasionally climb ramps or stairs, stoop, crouch, kneel, and reach overhead. (Tr. 15). The ALJ also stated that plaintiff could frequently balance, handle objects and finger. (Tr. 15). Moreover, the ALJ expressly considered plaintiff's ability to work on a sustained basis by noting that her sit/stand option could not take her off task for more than 10% of the work period. Therefore, the Commissioner asserts that the ALJ complied with the SSR 96-8p, and adequately discussed whether plaintiff could perform work-related activities on a sustained basis.

While plaintiff argues that the ALJ "never attempts any explanation or rationale" to justify his RFC finding, the Commissioner contends that the ALJ reasonably examined the relevant evidence and discussed the opinions from the medical sources of record. Plaintiff suggests that a finding that she had severe impairments is inconsistent with the ability to perform a restricted range of sedentary work. However, the Commissioner points out that a finding that a claimant has a severe impairment does not equate to a finding of disability. Instead, after determining whether a claimant has a severe impairment, an ALJ

must undertake an analysis of whether that claimant can still work despite her impairments. Here, the ALJ reviewed the medical and other evidence, and determined that plaintiff could still perform a highly restricted range of sedentary work. (Tr. 15). And, the Commissioner points out that plaintiff has not explained why her severe impairments would dictate a finding of disability.

Plaintiff also argues that the ALJ's RFC did not accurately portray her physical limitations because he did not accommodate her alleged need to elevate her feet or need to lie down due to fatigue. However, plaintiff's own treating physician, Dr. Abellana, stated that fatigue would not interfere with her ability to work. (Tr. 383). Although Dr. Abellana noted that plaintiff needed to elevate her feet, he did not provide any detail or objective medical evidence to support this workplace restriction. (Tr. 383). Plaintiff also offers unsupported claims that she suffered from concentration problems related to her fatigue and pain. However, plaintiff has not previously alleged any mental impairments, and the Commissioner asserts that there is no medical evidence that she suffered from any significant mental symptoms. For example, plaintiff has not provided any medical evidence or mental evaluation that reflects that she has difficulties with concentration. In addition, plaintiff argues that she is required to use a back brace, but cites no medical prescription or treatment note requiring the use of a brace. According to the Commissioner, the ALJ reasonably discounted plaintiff's

unsupported limitations, and properly included only plaintiff's credible limitations in his hypothetical question to the vocational expert and, ultimately, in his RFC assessment.

Plaintiff argues that the ALJ failed to perform the necessary analysis under SSR 02-1p to determine if plaintiff's obesity affected her ability to perform routine movement and physical activity within the work environment. According to the Commissioner, the Sixth Circuit has held that "it is a mischaracterization to suggest that SSR 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006). Instead, in order to satisfy SSR 02-1p, the ALJ must consider whether a claimant's obesity may increase the severity of coexisting or related impairments. SSR 02-1p, 2000 WL 628049, *5. Here, the Commissioner says that the ALJ relied on the on the findings of Dr. Shelby-Lane, who diagnosed plaintiff with obesity, but still indicated that she could walk, albeit slowly, without the use of a cane or aid. (Tr. 364). During Dr. Shelby-Lane's exam, plaintiff was also able to tandem walk, heel walk, and toe walk. (Tr. 364). Plaintiff did not demonstrate any significant reduction in her ability to perform routine movements. The ALJ also relied on the opinion of Dr. Joh, who diagnosed plaintiff with obesity. (Tr. 374). Dr. Joh noted that plaintiff could stand/walk for about six hours in an eight-hour day, and stated that plaintiff had no special mobility restrictions other

than obesity. (Tr. 375). According to the Commissioner, the ALJ accommodated plaintiff's mobility problems by limiting her to sedentary work and by limiting her ability to climb and crawl. (Tr. 375). Moreover, plaintiff has not cited to any doctor's opinion demonstrating that her obesity further limited her functioning. Thus, the Commissioner asserts that the ALJ reasonably determined that plaintiff's obesity did not increase the severity of her other impairments or affect her mobility to a greater extent than reflected in his RFC finding.

Plaintiff also argues that the ALJ ignored a portion of the vocational expert's testimony, but, according to the Commissioner, the testimony she cites was completely circular. The vocational expert agreed that plaintiff would be precluded from "full-time competitive work" if she was "unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week for a forty-hour work week." (Tr. 51). However, here, the ALJ found that plaintiff could work on a sustained basis, and relied on the rest of the vocational expert's testimony to determine that an individual with plaintiff's age, education, work experience, and RFC could perform a significant number of highly restricted sedentary jobs. (Tr. 18, 49-51). According to the Commissioner, plaintiff has not challenged this part of the vocational expert's testimony or explained why the ALJ was not entitled to rely on the vocational expert. For these reasons, the Commissioner asserts that the ALJ's decision should be affirmed.

## III.   DISCUSSION

A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

      The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis</u>

Much of plaintiff's brief is spent ticking down the list of errors by the ALJ, but there is a notable lack of citation to any record evidence to support plaintiff's claims of error or anything but the bare assertion of error.  While the undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the claim that dozens of reversible errors occurred and then leave it to the Court to scour the record to support these claims.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D. Mich. 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).  Thus, the undersigned will address the primary arguments raised by plaintiff.

Plaintiff's primary complaint is that the ALJ failed to give controlling weight to the opinion of her treating physician and failed to give sufficiently good reasons for giving it less than controlling weight.  In the view of the undersigned, the ALJ properly determined that Dr. Abellana's extreme opinion was not

supported by his treatment notes or any other record evidence.  While plaintiff was hospitalized in 2005 and again in early 2009, plaintiff points to nothing in Dr. Abellana's treatment records or in any of the other medical evidence presented to support such extreme limitations.  Plaintiff's statements that Dr. Abellana noted that plaintiff had a cast shoe on her right foot and was using a cane and that Dr. Abellana also requested plaintiff to participate in a sleep study do little to help explain how or why the ALJ got it wrong and do not support Dr. Abellana's opinions.  Under these circumstances, the ALJ was entitled to rely on the opinions of the consulting examiner and other consultants and give them greater weight. Plaintiff similarly fails to provide any meaningful support for her "cherry-picking" the evidence claim of error.  As the Commissioner points out, plaintiff cites no specific evidence that the ALJ allegedly ignored or failed to take into consideration.

The undersigned is equally unimpressed with plaintiff's arguments that the ALJ failed to analyze whether plaintiff could perform work on a sustained basis. The entire RFC discussion in the ALJ's decision is focused on determining what work plaintiff could perform on sustained basis.  Plaintiff's claim that the ALJ failed to factor in his RFC determination his own previous conclusion that plaintiff has the severe impairments of degenerative joint disease of the knees and hands along with the limitation of obesity is equally unavailing.  The ALJ made specific

accommodations for all of these severe impairments in the highly restrictive

sedentary RFC.  Plaintiff appears to be arguing that merely because plaintiff has

these severe impairments, she must be precluded from all work.  However, that is

inaccurate.  The residual functional capacity circumscribes "the claimant's

residual abilities or what a claimant can do, not what maladies a claimant suffers

from-though the maladies will certainly inform the ALJ's conclusion about the

claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.

2002).  "A claimant's severe impairment may or may not affect his or her

functional capacity to do work. One does not necessarily establish the other."

*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The

regulations recognize that individuals who have the same severe impairment may

have different [residual functional capacities] depending on their other

impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).

Given that a severe impairment does not equate to disability, the

undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations

to be only partially credible is supported by the substantial evidence in the record

and properly incorporated into the RFC finding for many of the same reasons that

the undersigned concluded that the ALJ properly rejected Dr. Abellana's opinions.

The ALJ's obligation to assess credibility extends to the claimant's subjective

2:10-cv-14926-PDB-MJH   Doc # 16   Filed 02/28/12   Pg 26 of 29   Pg ID 533

complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982) ( "a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999).  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531.  "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).  The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, based on the record, the ALJ found that plaintiff had an extremely limited RFC for a very limited range of sedentary work.  The undersigned concludes that the ALJ reasonably accommodated plaintiff's limitations and the decision is supported by substantial evidence.

      As to plaintiff's complaint that the ALJ did not properly consider her

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 10-14926

obesity, the undersigned finds no basis to disturb the ALJ's decision.  Obesity, by itself of course, does not constitute a disability. SSR 02-1p. Nonetheless, the condition must be considered in combination with other impairments in determining whether the claimant is disabled.  *Id*.  The administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition.  *Coldiron v. Commissioner of Social Security*, 2010 WL 3199693, *7 (6th Cir. 2010), citing *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004).  Here, the ALJ expressly examined the effects of plaintiff's obesity and concluded that nothing in the medical evidence showed a sufficient impact on functioning, beyond some mobility limitations, as noted by Dr. Shelby-Lane, which were fully accommodated in the RFC.  Plaintiff points to no evidence in the record to support her claim that she was further limited by her obesity than as found by the ALJ. Thus, the undersigned finds no basis to disturb the ALJ's findings on this basis.

     D.   <u>Conclusion</u>

     After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; Case No. 10-14926

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  February 28, 2012                    s/Michael Hluchaniuk_____
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on February 28, 2012, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Joshua L. Moore, Lynn M. Dodge, AUSA, and the
Commissioner of Social Security.

                                            s/Darlene Chubb_____
                                            Judicial Assistant
                                            (810) 341-7850
                                            darlene_chubb@mied.uscourts.gov